# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**FREDDY VASQUEZ,**

                    **Plaintiff,**

**-vs-**                                                    **Case No.  6:06-cv-1282-Orl-DAB**

**COMMISSIONER OF SOCIAL
SECURITY,**

                    **Defendant.**
_____

## MEMORANDUM OPINION AND ORDER

This cause came on for consideration without oral argument[1] on review of Defendant's denial of Plaintiff's application for social security disability insurance benefits.  For the reasons set forth herein, the decision of the Commissioner is **REVERSED and the matter is REMANDED under sentences four and six of 42 U.S.C. § 405(g)**, for further proceedings.

### PROCEDURAL HISTORY

Plaintiff filed an application for a period of disability with a protective filing date of September 16, 2003 (R. 94-98, 102).  The application was denied administratively, and Plaintiff sought and received a hearing before an Administrative Law Judge ("the ALJ") (R. 23-54).  The ALJ issued an unfavorable decision on January 26, 2006 (R. 16-22).  Plaintiff requested review from the Appeals Council, and submitted numerous additional documents (R. 8).  The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.   This action followed.

### NATURE OF DISABILITY CLAIM

Plaintiff alleges that he became disabled on June 17, 2003, due to residuals from a herniated disc at L4-5 and depression (R. 16).

---

[1]In view of the findings herein, the Court declines Plaintiff's request for oral argument.

*Summary of Evidence Before the ALJ*

Plaintiff was 33 years old at the time of the ALJ's decision (R. 27), with a high school education and past relevant work experience as a security guard, computer room operator and maintenance worker (R. 106).

The medical record before the ALJ indicated that Plaintiff suffered a claimed work related injury while carrying hurricane shutters on April 14, 2003 (R. 139). Plaintiff came under the care of Badolato Family Health at Suntree from June to August 2003 (R. 139-48). Examination on June 26, 2003, revealed pain radiating down Plaintiff's left leg (R. 146). Assessment was low back pain and left lower extremity sciatica, and Plaintiff was sent to Physical Therapy, with the restriction of no heavy lifting.

On return visit July 24, 2003, Plaintiff was assessed with muscle strain and placed on light duty (R. 143). On a July 31, 2003 return visit, Plaintiff still complained of significant pain (R. 141-2). He had an antalgic gait, positive leg raise, and was positive for muscle tenderness. Plaintiff was sent for an MRI and the notes reflect the work restriction: "No work until released." (R. 141).

A lumbar spine MRI taken on August 1, 2003, revealed a herniation on the left at L4-5 (R. 140). Although Plaintiff was referred to a specialist (R. 139), he later reported that he did not see the specialist, as his worker's compensation claim was denied (R. 168, see denial of claim at 192-93).

On February 13, 2004, Fairuz F. Matuk, M.D., performed an independent medical evaluation on referral from an attorney, apparently in connection with Plaintiff's worker's compensation case (R. 167-72). While Plaintiff complained of significant pain on a daily basis and stated that he had been unable to work since June 2003, he noted that he was not receiving any actual treatment or medications (R.168). On examination, Plaintiff appeared to be in distress and displayed a limp on his left side (R. 169). He carried a cane, but it was felt he was able to walk without it. He had severe

limitation to his forward flexion and moderate to severe limitation with extension. *Id.*  There was tenderness over the left sciatic notch and joint, without spasm.  Plaintiff was able to stand on one leg at a time without support, but displayed difficulty standing on his left heel and toes.  Plaintiff displayed a positive straight leg raise on the right at sixty degrees and a positive straight leg raise on the left at thirty to forty degrees.  Moderate weakness was noted in the left leg.  On the basis of the examination and review of the medical records, Dr. Matuk diagnosed a herniated disc at the L4-5 level with left lumbar radiculopathy (R. 170).  Dr. Matuk opined that Plaintiff had not reached maximal medical improvement, and it was felt that he was a candidate for micro-surgical disc excision at L4-5 on the left (R. 171).  The prognosis for such surgery was "usually good" with most patients "able to resume work two to six weeks postoperatively" (R. 171).  Maximum medical improvement would be achieved four to six months following the procedure, at which time permanent physical impairment would be determined (R. 171).

It appears that on May 25, 2004, following the IME, Plaintiff settled his worker's compensation claim (R. 100).

A residual functional capacity assessment was completed by a non-examining state agency physician on March 23, 2004 (R. 173-80).  The physician opined that Plaintiff retained the capacity to lift 20 pounds occasionally and 10 pounds frequently, sit six hours during an eight hour workday, stand and walk six hours during an eight hour workday, occasionally balance, stoop, and crouch, and should avoid concentrated exposure to hazards (R. 174-177).  Another state agency physician reviewed the record on July 9, 2004 (R. 181-88), and agreed with the above assessment, except that he opined that Plaintiff should never stoop (R. 183).

Although the medical records are not very clear, it appears that Plaintiff presented to the Veteran's Administration clinic for back pain and x-rays were taken on August 24, 2004 (R. 232).

The x-rays revealed no abnormalities (R. 232). In October 2004, additional x-rays were taken, which were also normal (R. 231). On November 8, 2004, a CT lumbar spine with and without contrast was performed due to a history of chronic back pain and herniation, and it was noted that Plaintiff was using a cane (R. 230). Impression was bulging annulus at L4 L5 which had undergone calcification impinging on the nerve root as it exits on the left side. *Id.* A follow-up MRI confirmed the herniated disc at L4-L5 (R. 229).

On January 6, 2005, Plaintiff was seen at the VA by psychiatrist Raymond DeCastro, M.D. (R 224-225). Plaintiff reported no relief from medications Wellbutrin and Clonazepam (R 224)[2]. He reported increased temper outbursts at his wife. Dr. DeCastro assessed dysthymic disorder, intermittent explosive disorder and narcissistic personality traits. A GAF[3] score of 46 was assessed, and medications were adjusted.

On January 24, 2005, Plaintiff presented to the VA for a physical examination (R. 218-9). Previous medical history noted intermittent explosive disorder, chronic low back pain, and adjustment reaction with mixed emotional features (R. 218).

A cervical MRI dated February 7, 2005, showed a herniated disc at C5-6 with moderate stenosis with adjacent osteophytes and a disc protrusion at C6-7 with moderate stenosis, also with adjacent osteophytes. (R.189-190). "Chronic findings" were noted. Following review of the cervical MRI, Plaintiff was referred to pain management for spinal stenosis in the cervical spine (R. 213-214).

On return visit to his psychiatrist February 10, 2005, Plaintiff reported improvement in his mental outlook and expressed a desire to stop all of his medications (R. 217). Dr. Decastro continued

---

[2]It is apparent that medical records are missing as there is no reference to Plaintiff being prescribed these medications previously.

[3]Global Assessment of Functioning.

to assess adjustment disorder with depression and intermittent explosive disorder, and instructed Plaintiff to taper off the medications gradually.  *Id.*

On March 7, 2005, Plaintiff returned for followup on the recent MRI (R. 213).  Despite the chronic changes noted, Plaintiff reported that "surgery is not an option at this time as he is awaiting decision on Social Security disability and that if he pursues surgical intervention, then the whole process is reset." *Id.*  Plaintiff received an injection for his pain, and was assessed with chronic low back pain and neck pain-cervical spondylosis without myelopathy (R. 212).

Plaintiff continued to complain of back and neck pain and continued to receive epidural injections and conservative care from the VA (R. 209-12).

On April 20, 2005, Plaintiff returned to his psychiatrist, noting that his lawyer noticed that he seemed depressed (R. 208).  Plaintiff expressed a concern that surgery was his only option for his back and "they give me a 50/50 chance with that." *Id.*  He also noted that he was told that if he was made worse by surgery he would have to apply all over again for social security and wait another several years before being given a determination. *Id.*  It was noted that Plaintiff "genuinely believes he is correctly following the best advice he was given" and "absolutely denied that he is attempting to manipulate the system." *Id.*  Dr. DeCastro assessed a depressed mood and affect and stated, "he is very demoralized." Assessment continued to be adjustment disorder with depression and intermittent explosive disorder.  Venlafaxine was prescribed with an order to increase the dose of medication to twice a day if tolerated.

On April 20, 2005, Plaintiff again reported pain in his neck and lower back. (R 205).  Percocet was prescribed.  On June 2, 2005,  Plaintiff reported additional pain in both knees along with continued pain in his neck and back. (R 201-202).  He was placed on Morphine, with a prescription of Percocet for breakthrough pain (R 202).

On June 15, 2005, Plaintiff returned to his psychiatrist, who noted his "usual flat affect" but "his attitude is much improved and shows an adjustment to his unfortunate impairment" (R. 200). His GAF was assessed at 52 (R. 201).

Plaintiff continued to present to the clinic for narcotics to treat his chronic pain (R. 195-201).

On August 25, 2005, Plaintiff was seen by his psychiatrist (R 194-5). Plaintiff reported increased depression. Dr. DeCastro assessed the Plaintiff as "dysphoric" and "even more resigned than last time" (R 194). Dr. DeCastro noted: "[U]nfortunately he does not seem yet to have developed any belief that he can overcome his limitations." *Id.*.

On September 21, 2005, Plaintiff was evaluated by neurosurgeon Mark Greenburg, M.D., of the Veteran's Administration Outpatient Clinic for cervical spine pain (R 191-192). Dr. Greenburg noted no neurological deficits, and recommended conservative treatment including cervical traction, ultrasound, heat and massage.

Plaintiff appeared at his hearing and testified. Unfortunately, numerous portions of the transcript were not able to be transcribed (*see* R. 25-54 and note portions described as "inaudible"). Plaintiff apparently testified with respect to his constant daily pain (*see* the ALJ's summary of his testimony at R. 19) and as to his understanding that someone in social security told him that if he had surgery, his claim would restart all over again (R. 38-40). A vocational expert also testified.

The ALJ determined that the medical evidence indicates that Plaintiff has a bulging annulus at L4-5, and right paracentral disc protrusion at C5-6 and C6-7 with moderate stenosis, a severe impairment, but not so severe as to meet or medically equal the Listings (R. 18). The ALJ found that Plaintiff's depression was non-severe. *Id.* The ALJ determined that Plaintiff's allegations were not totally credible, noting, among other things, Plaintiff's decision not to go to vocational rehabilitation after being told that attendance would interfere with his disability claim (R. 20). This was deemed

to "indicate[] possible reluctance to return to some type of employment." The ALJ found that Plaintiff retained the residual functional capacity (RFC) to perform a reduced range of light work, including his past relevant work as a security guard (R. 20, 22 Findings 7, 8) and was therefore not disabled.

### STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

*ANALYSIS*

Plaintiff raises three issues on review, asserting that 1) the ALJ erred in finding that Plaintiff's mental impairment was not severe; 2) the Appeals Council failed to consider new and relevant evidence; and 3) the ALJ erred in evaluating Plaintiff's credibility and complaints of pain.  The Court agrees that the ALJ erred in finding the Plaintiff's depression to be non-severe, finds that the evidence submitted to the Appeals Council warrants a sentence six remand, and therefore finds that review of the pain determination is unnecessary.  Remand is required.

**Plaintiff's depression**

The ALJ must follow five steps in evaluating a claim of disability.  *See* 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, he is not disabled.  29 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.  20 C.F.R. § 404.1520(f). Here, the ALJ determined the case at step four.

In evaluating Plaintiff's allegations of a mental impairment, the ALJ noted that Plaintiff "receives, and responds well, to routine mental health therapy for depression" (R. 18), and therefore his depression "does not impair his ability to perform basic work activities and is considered non-severe." *Id.*  This conclusion is not supported by substantial evidence.

-8-

As noted by Plaintiff in his brief, at step two of the evaluation, the plaintiff's burden of showing severity is mild, as he or she "need show only that [his or] her impairment is not so slight and its effect is not so minimal." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986) (holding that the severity step is a threshold inquiry which allows only "claims based on the most trivial impairments to be rejected").  Here, as indicated above, Plaintiff presented uncontradicted evidence that he suffered not only from depression, but from dysthymic disorder, intermittent explosive disorder (including reports of uncontrolled outbursts directed at his wife), narcissistic personality traits, and adjustment disorder.  The ALJ did not mention these other diagnosed impairments (error in and of itself), referring to Plaintiff's situation as only "routine mental health therapy for depression."  There is no substantial evidence in the record to support that characterization.

Uncontradicted treatment notes reflect that Plaintiff's GAF assessment varied from the 40's to 52, indicating moderate to serious symptoms or difficulty in social, occupational or school functioning.[4]  Plaintiff's mental health required regular visits and medication and there is *no* evaluation in the record from any other psychiatrist or psychologist, treating, consultative or otherwise, finding that Plaintiff's impairments were minor or referring to Plaintiff's diagnosis or treatment as "routine."

The Commissioner argues that the GAF scores present only a snapshot of Plaintiff's functioning at the time and that the mere diagnosis of Plaintiff's mental health conditions does not indicate that his conditions caused work-related limitations.  While the Court agrees with these general statements, here, Plaintiff's testimony and his psychiatrist's records are the *only* evidence as to Plaintiff's mental health in the record.  To the extent they indicate repeated mention of Plaintiff's "explosive" temper, crying episodes and chronic complaints, findings of only mild difficulty in

---

[4]*See* The Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition.

maintaining social functioning, and no episodes of decompensation are unsupportable (*See* R. 224-5, 208, 200 and 194).  As Plaintiff's mental health impairment was improperly found to be non-severe for the purposes of step two, the decision must be reversed and the matter remanded for additional consideration (which may include further development of the record, if appropriate) as to Plaintiff's mental health impairment.

### Sentence Four and Six

The district court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences.  *Jackson v. Chater*, 99 F.3d 1086 (11th Cir. 1996).  To remand under sentence four, the district court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim.  *Jackson*, 99 F.3d at 1090-91 (remand appropriate where ALJ failed to develop a full and fair record of claimant's residual functional capacity).

Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow him to explain the basis for his decision.  *Falcon v. Heckler*, 732 F.2d 827 (11th Cir. 1984).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *Diorio v. Heckler*, 721 F.2d 726 (11th Cir. 1983).  After a sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction.  *Jackson*, 99 F.3d at 1089, 1095.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g).  To remand under sentence six, the claimant must establish: 1) that there is new, non-cumulative evidence; 2) that the evidence is material – relevant and probative so that there is a reasonable possibility that it would change the administrative result; and 3) there is good cause for failure to submit the evidence at the administrative level.  *See Jackson*, F.3d at 1090-92; *Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988); *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1067 (11th Cir. 1994).

A sentence-six remand may be warranted even in the absence of an error by the Commissioner if new, material evidence becomes available to the claimant.  With a sentence-six remand, the parties must return to the district court after remand to file modified findings of fact.  The district court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.  *Jackson*, 99 F.3d at 1095.

Here, following the adverse decision issued January 26, 2006, Plaintiff requested review and provided additional records from the VA as well as vocational rehabilitation.  The records include physical therapy progress notes showing that Plaintiff continued to be treated for his neck and back pain in October and November 2005; a note from his treating physician dated December 6, 2005 (R. 249-51) indicating that Plaintiff would receive a handicap parking permit; a note from the physician dated January 17, 2006, with respect to a jury duty summons, stating that Plaintiff "is known to have a condition that may make prolonged sitting, standing or maintaining certain positions a difficulty" (R. 248), and, most importantly, the following note from his treating physician at the VA dated January 31, 2006, five days after the date of the ALJ's decision:

> Mr. Vasquez has been a patient at this clinic since August of 2004 when he presented for low back pain and neck pain. He has undergone testing which showed disc herniation in both the neck and lower back which may account for the symptoms he describe[s] (low back and neck pain). He has undergone physical therapy and epidural steroid injections, as well as other modalities, with no significant improvement. He is

now being referred for possible surgical intervention. As a result of his condition, he
has not been able to work throughout this time. (R 246).

Later records presented to the Appeals Council include an updated MRI of the lumbar spine

dated February 14, 2006, which showed a left disc protrusion at L4-5 with lateral stenosis (R 244).

On February 17, 2006, Plaintiff returned to his psychiatrist with a depressed mood and affect "but

maintain[ing] a calm, flat, resigned demeanor without the previous hostility or agitation." (R. 243).

He reported that he had not spoken to his wife for three days and "did not know what to do." GAF

was listed as 49, assessment continued to be adjustment disorder with depression and intermittent

explosive disorder, and medications were continued.

On April 4, 2006, Plaintiff was referred to Brevard Achievement Center by Vocational

Rehabilitation. (R 260-262). Following a six day work trial, Certified Vocational Evaluator Timothy

Seaman opined that the Plaintiff did not appear capable of successfully completing a vocational

program or working at a competitive level due to very limited stamina and pain tolerance (R 261).

Subsequently, in a letter dated May 12, 2006, Vocational Rehabilitation Consultant William Anderson

closed the Plaintiff's case with Vocational Rehabilitation stating, "[I]t has been determined that you

are not eligible for vocational rehabilitation services because your *disability is too severe at this time*

for rehabilitation services to result in an employment outcome" (R 269). Plaintiff was advised "to

pursue benefits through the Social Security Administration. [emphasis added]" (R. 269).

The above evidence, to the extent it contains records after the date of the decision, is "new"

and good cause exists for its absence in the original administrative record. *See Hyde v. Bowen*, 823

F.2d 456, 459 (11th Cir. 1987) (The good cause requirement is satisfied when the evidence did not

exist at the time of the administrative proceedings). Moreover, the Court finds that the evidence is

material, in that there is a reasonable probability that it would change the administrative result.

The Commissioner contends, with no discussion, that the additional evidence "documents no obvious findings that would have changed the ALJ's decision," (Brief at 14, n. 3). To the contrary, the opinion of the treating physician that Plaintiff was unable to work since August 2004 could well have made a difference here. Great weight is usually accorded to the opinion of a treating physician. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). Although the Commissioner contends that the new evidence "is not germane," such a contention is belied by his brief, which argues: "Here, no treating or examining physician of record imposed any restrictions on Plaintiff's ability to do work-related activities" (Brief at 9), a statement clearly rebutted by the new evidence.[5] Moreover, the later records from the psychiatrist continue to show low GAF scores and continued residuals from Plaintiff's mental impairments.

Additionally, it is clear from the opinion of the ALJ that he interpreted Plaintiff's refusal to complete vocational rehabilitation as evidencing reluctance to return to employment. The vocational testing, however, establishes no such malingering (he attended all six evaluation days and was punctual, albeit motivation to work "appeared to be significantly compromised by his current physical condition"-R. 261) and tends to support Plaintiff's story that he was told to pursue his social security claim instead of vocational rehabilitation. Moreover, the ALJ's conclusion that Plaintiff can return to his past employment is contradicted by the impartial findings of the evaluator that Plaintiff is

---

[5]Moreover, the contention is otherwise inaccurate as Dr. Badolato specifically noted: "no work until released."(R. 141) and the record does not reflect that Plaintiff was ever so released.

unable to work.  The findings of another agency on disability, while not binding on the Commissioner, are entitled to great weight. *Falcon v. Heckler,* 732 F. 2d 827 (11th Cir. 1984).[6]

While the Court does not hold that the new evidence is necessarily dispositive on the ultimate issue of disability, Plaintiff has more than met the standard for remand under sentence six.  He is entitled to have the new evidence considered and evaluated by the ALJ.

**Pain and Credibility**

In view of the Court's determination that the Commissioner's decision must be reversed and remand is required for additional consideration as to Plaintiff's mental health impairment and the new evidence, the Court need not reach the issue of whether the ALJ erred in his determination as to Plaintiff's pain and credibility.  The Court does note that in view of the above, and considering that the testimony is, in part, inaudible, on remand, the ALJ may wish to further develop the record by convening another hearing, in addition to obtaining such additional reports and/or evaluations as may be appropriate.

### CONCLUSION

The decision of the Commissioner is not supported by substantial evidence and was not made in accordance with proper legal standards.  As such, it is **reversed, and the case is remanded, under sentence four and sentence six,  to the Commissioner for consideration of the additional evidence and reconsideration of Plaintiff's claim.**  The Clerk is directed to enter judgment, noting that remand is under both sentence four and sentence six, and administratively close the case.[7]

---

[6]The administrative record is replete with references to Plaintiff's erroneous belief that he could not pursue surgery or vocational rehabilitation during the pendency of his social security application. As Plaintiff does not appear to be particularly sophisticated (according to his psychiatrist), Plaintiff's stubborn insistence on not pursuing either path may reflect more on his narcissistic personality traits (the desire to always be right) than on a desire to beat the system. Regardless, the existence (or nonexistence) of that inference is for the ALJ to determine, after reviewing all of the evidence on remand.

[7] This is a dual remand case. *See Jackson v. Chater,* 99 F.3d 1086 (11th Cir. 1996).  As such, the Court enters a judgment, but retains jurisdiction due to the sentence six remand.

-14-

    **DONE** and **ORDERED** in Orlando, Florida on July 9, 2007.

*David A. Baker*
_____
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record